UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEUROLOGICAL SURGERY, P.C.,

                Plaintiff,

    -against-

OXFORD HEALTH PLANS (NY), INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**<u>AMENDED COMPLAINT</u>**

Docket No. 18 Civ. 560 (ADS) (AYS)

*Case Removed from the New York Supreme Court, Nassau County*

**<u>JURY TRIAL DEMANDED</u>**

       Plaintiff, Neurological Surgery, P.C. ("Neurological Surgery"), by its attorneys, Garfunkel Wild, P.C., alleges for its Complaint against Defendant, Oxford Health Plans (NY), Inc. ("Oxford"), that:

## <u>INTRODUCTION</u>

    1.    Plaintiff is NSPC, a Long Island-based medical practice, which brings this lawsuit against Oxford because Oxford has failed to properly and timely honor its obligation to pay NSPC for medically necessary services that NSPC provided to the members and/or subscribers of Oxford's health plans and their beneficiaries (collective, "Oxford Members").

    2.    As we explain in detail below, NSPC is the largest private neurosurgery practice on Long Island and in the tri-state area. Its award-winning specialists are among the best neurosurgeons in New York City and on Long Island and serve as Chiefs of Neurosurgery in some of the most prestigious hospitals on Long Island.

3.      NSPC maintains offices in Great Neck, Rockville Centre, Lake Success, Bethpage, Commack, West Islip, Port Jefferson Station, Patchogue, Queens, and Manhattan. It has developed Centers of Excellence in a wide variety of neurosurgery and related subspecialties, including a Brain Tumor Center, Spine Center, Trigeminal Neuralgia and Face Pain Center, Cerebrovascular/Neuroendovascular Center, Pediatric Neurosurgery Center, General Neurosurgery Center, Movement Disorder Center, Epilepsy Center, Concussion Center, Stereotactic Radiosurgery Center, Chiari Malformation Center, and Pain Center.

4.      Upon information and belief, Oxford is among the largest health insurers in the New York metropolitan area. Oxford's corporate grandparent is UnitedHealth Group, Inc., the world's largest health care company. In 2016, United HealthGroup has a revenue of $184 billion and, through its subsidiaries, including Oxford, insured approximately 115 million individuals.

5.      Oxford enters into agreements with health care providers whereby the providers join its "provider networks." The physicians that join the provider network agree to provide health care services to members of the health plan at contractually agreed upon reimbursement rates, which are typically discounted rates, compared to the providers' usual and customary rates. Such providers are known as "in-network" providers.

6.      Other providers, like NSPC, do not enter into contracts with Oxford, and bill the usual, customary, and reasonable charges for the services rendered. Such providers are known as "out-of-network" or "non-participating" providers.

7.      Upon information and belief, a substantial number of Oxford's agreements with its subscribers or members and their beneficiaries give these Oxford Members the right to seek

5305236v.1

medically necessary treatment from health care providers who are not participating providers in Oxford's health care networks.

8.      Under these agreements, when an out-of-network provider renders medically necessary treatment to an Oxford Member, Oxford is obligated to reimburse the Oxford Member or out-of-network provider at the usual, customary, and reasonable charges for the services rendered, less any co-payment, co-insurance, member out-of-pocket, or deductible amounts. (This amount is the "UCR Rate.")

9.      By its own choice, NSPC is not a participating provider in Oxford's networks. Notwithstanding NSPC's status as a non-participating provider, NSPC routinely receives authorization and assignments from its patients who are Oxford Members to receive payment directly from Oxford.

10.     This litigation arises primarily out of Oxford's wrongful failure and refusal to reimburse NSPC – in many cases, at all, and in other cases, at anything more than a dramatically reduced rate – for medically necessary services that its surgeons provided to Oxford Members.

11.     As set forth below, Oxford's persistent refusal to pay for NSPC's services has breached myriad legal obligations and violated federal and state law.  Accordingly, NSPC is entitled to the relief demanded in this Complaint.

## PARTIES

12.     Plaintiff NSPC is a New York professional corporation with its principal place of business located at 100 Merrick Road, Suite 128W, Rockville Centre, New York.

13.     Upon information and belief Defendant Oxford Health Plans (NY), Inc. is a New York for-profit health maintenance organization with a principal place of business located at 521 Fifth Avenue, New York, New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**Oxford Has Failed to Pay NSPC's Out-of-Network
Claims at All, or Has Failed to Pay at the Correct Rate**

14.     Many of the patients who seek out and are treated by NSPC have complex, and often emergent, neurological conditions requiring neurosurgical procedures and treatment.

15.     NSPC's physicians perform these procedures at hospitals and other healthcare facilities located throughout the New York metropolitan area.

16.     A significant number of NSPC's patients have health insurance coverage from Oxford, or are members, subscribers, or beneficiaries of group health plans for which Oxford is the plan sponsor or administrator.

17.     As set forth in detail below, in addition to offering fully-insured health plans, Oxford acts as the plan sponsor or administrator of self-insured group health plans by making determinations regarding plan interpretation, coverage, the awarding or denial of benefits, the processing and determination of appeals, and the payment of benefits.

18.     A substantial number of Oxford's agreements with its subscribers or members give these Oxford Members the right to seek medically necessary treatment from health care providers who are not participating providers in Oxford's health care networks.

4

19.     Under these agreements, when an out-of-network provider renders medically necessary treatment to an Oxford Member, Oxford is obligated to reimburse the Oxford Member or out-of-network provider at the UCR Rate.

20.     Further, under Section 2719A(b) of the Public Health Service Act, 42 U.S.C. § 300gg-19a(b), and 29 C.F.R. § 2590.715–2719A(b), Oxford, as the sponsor or administrator of any self-insured group health plan, must provide coverage for out-of-network emergency health care services, and must do so at the greatest of (a) the median in-network rate that the plan pays for the same services; (b) the rate that the plan pays for out-of-network services, which is typically based upon the UCR Rate; and (c) the rate offered by Medicare.  In addition, Oxford plan may not impose any greater administrative requirement or limitation on coverage for out-of-network emergency services than it does for in-network emergency services, nor can it impose greater co-payments, co-insurance, member out-of-pocket, or deductible amounts for its members for out-of-network emergency services than it does for in-network emergency services.

21.     Similarly, Sections 3216(i)(9), 3221(k)(4), and 4303(a)(2) of the New York Insurance Law require Oxford to provide members of its fully-insured plans with coverage for medically necessary emergency medical services.     Additionally, Sections 3217-a(a)(8), 3221(k)(4), 4303(a)(2), and 4900(c) of the New York Insurance Law, and Section 4408(1)(h) of the New York Public Health Law, require that Oxford, when offering a managed care product, hold their members harmless for any non-participating provider charges for emergency services that exceed the in-network copayment, coinsurance, or deductible.

22.     By its own choice, NSPC is not a participating provider in Oxford's networks. Notwithstanding its status as an Oxford non-participating provider, NSPC routinely receives

5

authorization and assignments from its patients who are Oxford Members to receive payment directly from Oxford.

23.     When patients elect to assign their benefits under their Oxford insurance plans, they execute an assignment of benefits form.

24.     Regardless of whether of not the applicable health plans at issue contain anti-assignment clauses, Oxford has accepted and acknowledged the assignments of benefits at issue in this lawsuit because, as detailed below, Oxford communicated with, paid, and otherwise dealt directly with NSPC in connection with the health claims at issue.  Such dealings and course of conduct overrode and effected a waiver of any anti-assignment clause.

25.     By these assignments of benefits, contractual relationships were created by which Oxford is obligated to reimburse NSPC directly for the services provided to the Oxford Members.

26.     On the dates of service set forth in the annexed spreadsheet of medical claims in issue, the Oxford Members listed therein presented to NSPC with health conditions requiring NSPC to provide them with medically necessary health care services.  The spreadsheet of all medical claims at issue in this litigation is annexed hereto as Exhibit 1 and incorporated herein by reference.[1]

27.     The health care services provided by NSPC as set forth in Exhibit 1 were covered services under the applicable health plan documents.

---

[1] The attached spreadsheet is filed under seal in accordance with the protective order entered in this matter, to protect patient confidentiality pursuant to the Health Insurance Portability and Accoutability Act.

5305236v.1

28.     Oxford was aware at or around the times that Oxford Members received the health care services at issue that NSPC provided these persons with covered health care services.

29.     Oxford, as detailed below, engaged in communications or discussions with NSPC acknowledging – or at the very least manifesting its awareness – that NSPC was providing the Oxford Members with covered health care services.

30.     In all situations, NSPC was justified in providing medical services to the Oxford Members, and in expecting payment, because it was mutually understood that Oxford would reimburse NSPC for medically necessary services covered under the applicable health plan documents.

31.     Given these facts and circumstances, NSPC reasonably expected that Oxford would pay for these covered services at the rates and levels required under applicable health plan documents, as well as federal and state law.

32.     By reason of the foregoing, express contracts or contracts implied-in-fact arose between Oxford and NSPC (the "Contracts"), whereby NSPC agreed to provide covered health care services to Oxford Members in exchange for Oxford paying NSPC for those covered health care services at the rates and levels set forth under applicable health plan documents, as well as federal and state law.

33.     Based upon the claims forms submitted and information provided to Oxford, its obligation to pay the claims for services listed below was, and should have been, reasonably clear to Oxford in accordance with section 3224-a of the New York Insurance Law.

34.   Based on Oxford's representations regarding payment to NSPC, and the provisions of the federal Public Health Service Act and the New York Insurance and Public Health Laws, NSPC provided the health care services detailed below expecting to be promptly and properly paid for the services that were performed, medically necessary, and billed appropriately.

35.   Unfortunately, this has not been the case.

36.   In many of the claims for health care services, Oxford has completely failed – in some cases for several years – to pay anything for the medically necessary and covered treatment provided by NSPC.

37.   And, in those cases in which Oxford paid something for the medically necessary and covered treatment provided by NSPC to Oxford Members, the amount paid was long delayed for no reasonable justification, and the amount paid was far below the required rate.

38.   For months, and in some cases, years, NSPC has attempted to enter into a meaningful dialog with Oxford so as to obtain prompt and proper payment for the outstanding claims on Exhibit 1.

39.   Indeed, in all cases, the claims on the attached spreadsheet were subject to appeals submitted by NSPC to Oxford, in an attempt to obtain appropriate payment for the claim.

40.   NSPC's billing company routinely calls Oxford to follow up on unpaid or underpaid claims, and follows all instructions provided by Oxford, whether verbally or in writing, regarding the timing and form of appeals NSPC must take in order to have claims reviewed.

5305236v.1

41.     Despite this, NSPC's claims appeals submitted to Oxford have either been improperly denied or have been ignored altogether.

42.     Accordingly, NSPC's efforts to obtain proper payment for the claims annexed hereto have largely fallen on deaf ears.  All that the effort has produced are vague letters and promises of proper payment at some uncertain point in the future, endless requests and re-requests for documents supporting the claims, and vague allegations or intimations regarding supposedly valid defenses to the outstanding claims, which never seem to materialize.

43.     Accordingly, having exhausted all reasonable administrative remedies and appeals – to the point where further administrative actions and appeals would be futile –NSPC has been forced to commence this lawsuit.

## FIRST CAUSE OF ACTION

44.     NSPC repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

45.     Some of the Oxford Members listed above to whom NSPC provided medically necessary health care services were, at the time, enrolled in employee benefit plans established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, in which Oxford serves as the plan sponsor or administrator.

46.     As set forth in detail above, Oxford acts as the plan sponsor or administrator of these health plans by making determinations regarding plan interpretation, coverage, the awarding or denial of benefits, the processing and determination of appeals, and the payment of benefits.

9

47.    The health plan documents at issue require Oxford, as plan sponsor or administrator, to pay the cost of medically necessary covered health care services provided to Oxford Members.

48.    As set forth in detail above, NSPC provided medically necessary covered health care services to the Oxford Members at issue.

49.    NSPC complied with the procedural requirements set forth in the relevant health plan documents for providing, and obtaining reimbursement for providing, covered health care services to the Oxford Members at issue.

50.    As detailed above, NSPC properly billed Oxford for the medically necessary, covered health care services provided to the Oxford Members at issue pursuant to the assignments of benefits received.

51.    By virtue of all of the foregoing, NSPC was entitled to be reimbursed for providing covered healthcare services to the Oxford Members at issue.

52.    As detailed above, Oxford improperly and without justification failed to pay NSPC in full, or in some cases at all, for the covered healthcare services rendered to the Oxford Members at issue.

53.    ERISA, 29 U.S.C. § 1132, provides that a beneficiary of an employee benefit plan may bring a civil action to recover benefits due under the plan, to enforce rights under the plan, and to clarify rights and future benefits under the plan.

54.     As detailed above, the Oxford Members at issue have assigned their right to receive benefits under the relevant health plans to NSPC.

55.     Accordingly, NSPC brings this cause of action as an assignee of the Oxford Members at issue.

56.     As discussed above, Oxford's failure to pay NSPC in full, or in many cases at all, for the medically necessary, covered health care services provided to its members, beneficiaries, and subscribers constitutes a breach of the plan documents, and of its obligations as a plan sponsor or administrator.

57.     Oxford's actions were arbitrary and capricious, without reason, unsupported by substantial evidence, and erroneous as a matter of law.

58.     Oxford's actions were infected and influenced by conflicts of interest.

59.     As described above, NSPC has exhausted all available administrative remedies or appeal rights, and pursuing any further appeals or administrative proceedings would be futile.

60.     Specifically, all appeals and other administrative remedies have either been denied or have been outstanding for such a long time that the only reasonable conclusion that can be drawn is that they have been ignored and are deemed denied.

61.     Additionally, as detailed above, so many unsuccessful attempts have been made by NSPC to inquire about the status claims, to obtain payment, and to secure a reasonable and legal decision on the health care claims at issue, that the only conclusion that can be drawn is that further administrative proceedings would be futile.

5305236v.1

62.     As a direct and proximate result of the above-described conduct of Oxford in failing to provide coverage and pay benefits to NSPC, NSPC has been damaged in an amount equal to the amount of benefits to which NSPC would have been entitled under the terms of the health plans at issue.

63.     As a direct and proximate result of the above-described conduct of Oxford in failing to provide coverage and benefits under the health plans at issue, NSPC has suffered, and will continue to suffer in the future, damages under the health plans, plus interest and other economic and consequential damages, for a total amount to be determined at the time of trial.

64.     NSPC is entitled to benefits and prejudgment interest at the appropriate rate.

## SECOND CAUSE OF ACTION

65.     NSPC repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

66.     ERISA, 29 U.S.C.A. § 1132(g)(1) authorizes this Court to award reasonable attorneys' fees and costs of this action to either party in an ERISA action.

67.     As a result of the actions and failings of Oxford described above, NSPC has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action. Further, NSPC anticipates incurring additional attorneys' fees and costs in subsequently pursuing this action, in a total amount that is currently unknown. NSPC therefore requests an award of reasonable attorneys' fees and costs.

5305236v.1

## THIRD CAUSE OF ACTION

68.     NSPC repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

69.     Through the assignments of benefits enumerated above – which have been acknowledged and accepted by Oxford – NSPC obtained the right to enforce the health plan contracts between Oxford and the Oxford Members listed above.

70.     These health plan contracts, as detailed above, obligate Oxford to provide reimbursement for the medically necessary, covered health care services provided to the subscribers and/or members of those plans and their beneficiaries.

71.     NSPC, as enumerated above, provided medically necessary, covered health care services to the Oxford Members at issue.

72.     NSPC -- as well as the Oxford Members at issue – have substantially and materially performed each and every obligation owed under these health plan contracts from their formation to date.

73.     Oxford has breached its obligations under these health plan contracts by failing to timely and properly pay NSPC for the medically necessary, covered services detailed above.

74.     Oxford's conduct was wanton, reckless, and affected the public.

75.     By reason of the foregoing, NSPC has been damaged in an amount to be determined at trial.

5305236v.1

76.     By reason of the foregoing, NSPC is entitled to punitive damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

77.     NSPC repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

78.     Implied-in-fact contracts arose between Oxford and NSPC regarding the provision of, and corresponding payment for, the medically necessary, covered health care listed above that were provided to Oxford Members based on the parties' course of dealings and pattern of conduct.

79.     Specifically, in many cases, Oxford was aware at, before, or during the time the services were rendered – because of pre-authorization, pre-certification, or other requirements – that NSPC was providing the medically necessary, covered health care services at issue.

80.     As a result of the facts and circumstances surrounding the acts and conduct of the parties, there was a meeting of minds.

81.     This meeting of the minds constituted an implied-in-fact agreement.

82.     NSPC has substantially and materially performed each and every obligation owed under these implied-in-fact contracts.

83.     Oxford, as detailed above, has breached its obligations under these contracts by failing to timely and properly pay NSPC for the medically necessary health care services at issue that NSPC provided to the Oxford Members at issue.

14

84.     Oxford's conduct was wanton, reckless, and affected the public.

85.     By reason of the foregoing, Oxford has been damaged in an amount to be determined at trial.

86.     By reason of the foregoing, NSPC is entitled to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

87.     NSPC repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

88.     NSPC was entitled to be paid at a reasonable rate by Oxford for the medically necessary, covered health care services listed above to the Oxford Members at issue.

89.     Oxford improperly and without justification failed to timely and properly pay NSPC for the medically necessary and covered services it provided, as enumerated above.

90.     Oxford was unjustly enriched by not paying NSPC at a reasonable rate, or in some cases at all.

91.     This enrichment was at NSPC's expense.

92.     Given all of the facts and circumstances, Oxford must return this unjust benefit to NSPC.

93.     By reason of the foregoing, NSPC has been damaged in an amount to be determined at trial.

5305236v.1

94.     By reason of the foregoing, NSPC is entitled to punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

95.     NSPC repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

96.     NSPC has a valid contractual relationship with each of the Oxford Members listed above, arising from: (a) NSPC's agreement to provide medical treatment and the Oxford Members, and the Oxford Members' corresponding agreement to pay NSPC for those services; or (b) each authorization and assignment that NSPC received from the these Oxford Members allowing it to receive payment directly from Oxford.

97.     Oxford knew of these contractual or business relationships and maliciously, intentionally, and without justification interfered with them by, among other things:

a)     issuing blanket medical necessity denials on claims for medically necessary, covered health care services provided to Oxford Members without actually reviewing the medical necessity of the services rendered;

b)     issuing medical necessity denials on claims for services provided to Oxford Members by NSPC when such services were known by Oxford to be entirely medically necessary;

c)     issuing checks and payments directly to patients in a manner designed to encourage Oxford Members not to honor their obligations to NSPC;

d)     issuing denials on claims for services provided to Oxford Members by NSPC in such a way as to avoid external appeal requirements imposed by the New York Public Health Law and New York Insurance Law; and

e)     deliberately avoiding, delaying, and systematically denying reimbursement to NSPC for medically necessary services provided to Oxford Members without explanation.

16

98. By reason of the foregoing, NSPC has been damaged in an amount to be determined at trial.

99. By reason of the foregoing, NSPC is entitled to punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

100. NSPC repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

101. New York Insurance Law § 3224-a (the "Prompt Pay Law") provides that in the processing of all health care claims and bills from health care providers, any insurer or organization or corporation licensed or certified pursuant to Insurance Law article 43 or Public Health Law article 44 shall pay the bill or claim of a medical provider within 45 days of receipt.

102. Oxford, as explained above, has unjustifiably failed and refused to compensate NSPC in compliance with the requirements of the Prompt Pay Law for the medically necessary, covered health care services provided to the Oxford Members at issue within 45 days of receipt of NSPC's claims for those services.

103. Oxford's actions constitute a violation of the Prompt Pay Law.

104. By reason of the foregoing, NSPC has been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

105. NSPC repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein

17

106.    Upon information and belief, each of the Oxford Members listed above has entered into contracts with Oxford under which Oxford is to pay claims for covered health care services that health care providers rendered to those Oxford Members.

107.    NSPC, as an out-of-network provider who, in the knowledge of Oxford, provides health care services to Oxford Members, is an intended beneficiary of these contracts.

108.    Oxford breached these contracts by failing to promptly and properly pay NSPC for covered health care services, as enumerated above.

109.    By reason of the foregoing, NSPC has been damaged at an amount to be determined at trial.

110.    By reason of the foregoing, NSPC is entitled to punitive damages in an amount to be determined at trial.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff Neurological Surgery, P.C. demands Judgment against of Defendant Oxford Health Plans (NY), Inc. as follows:

a)      on the first cause of action, declaring that Defendant failed to comply with the minimum requirements of ERISA and other federal and state laws in connection with their denial of benefits under the health plans at issue;

b)      on the first cause of action, awarding benefits payable under the health plans at issue that Plaintiff is entitled to receive;

18

c)      on the first cause of action, awarding future benefits payable under the health plans at issue that Plaintiff is entitled to receive;

d)      on the first cause of action, awarding prejudgment interest;

e)      on the second cause of action, awarding reasonable attorneys' fees pursuant to 29 U.S.C.A. § 1132(g)(1), and the costs of suit incurred;

f)      on the third cause of action, awarding compensatory and punitive damages in an amount to be determined at trial, together with interest thereon;

g)      on the fourth cause of action, awarding compensatory and punitive damages in an amount to be determined at trial, together with interest thereon;

h)      on the fifth cause of action, awarding compensatory and punitive damages in an amount to be determined at trial, together with interest thereon;

i)      on the sixth cause of action, awarding compensatory and punitive damages in an amount to be determined at trial, together with interest thereon;

j)      on the seventh cause of action, awarding compensatory damages in an amount to be determined at trial, together with interest thereon to be computed in accordance with New York Insurance Law § 3224-a;

k)      on the eighth cause of action, awarding compensatory and punitive damages in an amount to be determined at trial, together with interest thereon; and

5305236v.1

l)      awarding such other and further relief as this Court deems equitable, just, or

proper, including the costs, disbursements, attorneys' fees, and other allowances

of this action.

Dated: Great Neck, New York
       May 23, 2018

                                        GARFUNKEL WILD, P.C.
                                        *Attorneys for Plaintiff*

                                        By _____/s/ *Roy W. Breitenbach*_____
                                                Roy W. Breitenbach
                                                Colleen M. Tarpey
                                                Marc A. Sittenreich
                                        111 Great Neck Road
                                        Great Neck, NY 11021
                                        (516) 393-2200

TO:     Michael H. Bernstein, Esq.
        Matthew P. Mazzola, Esq.
        ROBINSON & COLE LLP
        *Attorneys for Defendant*
        666 3rd Avenue, 20th Floor
        New York, New York 10174